UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

FILED

98 FEB 24  AM 9: 02

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| GARRY V. STRINGFELLOW, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CIVIL ACTION No. CV-96-S-2176-NE |
| | ) |
| REGAL NISSAN, CO. a/k/a | ) |
| REGAL NISSAN MERCEDES-BENZ, | ) ENTERED |
| | ) |
| Defendant. | ) FEB 2 4 1998 |

## MEMORANDUM OPINION

Garry Van Stringfellow is a white male who formerly was
general manager of defendant's auto dealership. He alleges his
employment was terminated because he "refused to mistreat ... black
employees," and "refused to fire [African-Americans] because of
their race." (Plaintiff's Complaint ¶ 7.) Stringfellow asserts
his termination was a violation of Title VII of the Civil Rights
Act of 1964, as amended by the Civil Rights Act of 1991 (42 U.S.C.
§§ 2000e *et seq.*), in that, defendant's action "constitute[d]
unlawful reprisal against him because he engaged in protected
activity by implementing, and attempting to implement Title VII
law, and by refusing to violate the same." (Plaintiff's Complaint
¶ 9.)[1]

Defendant asserts a counterclaim for intentional interference
with business and contractual relations. (Counterclaim ¶ 1.)
Regal Nissan alleges that Stringfellow wrote a letter to its
franchisor, Mercedes-Benz of North America, Ltd., accusing the

---

[1] The original and amended complaints named several defendants. By order
entered January 10, 1997, this court dismissed all defendants except Regal Nissan
Company.

dealership of discriminatory practices. (Counterclaim ¶ 4.) The matter now is before this court on defendant's motion for summary judgment as to all claims.

## I. SUMMARY OF FACTS

Regal Nissan is an automobile dealership located in Huntsville, Alabama. It principally sells new cars and trucks manufactured by Nissan and Mercedes-Benz. (Richardson Affidavit ¶ 2.) David Richardson is president of the company. He initially retained Stringfellow on August 6, 1993, as a finance and insurance consultant, to assist the dealership improve its sales performance. (Stringfellow Affidavit at 1.) The agreement stated, in part, that "Consultant shall improve gross income from its current level of $342.00 per retail unit." (Id., Exhibit 3.)

Less than a month later, on September 1, 1993, Richardson offered Stringfellow the position of general manager. (Stringfellow Affidavit at 2.) Stringfellow admittedly lacked experience in managing the "back end" of an automotive dealership (parts and service), but claims that Richardson promised to train him in those areas once the "front end" (sales) improved sufficiently. (Id. at 6.)

During Stringfellow's tenure as general manager, total vehicle sales did increase. (Id. at 3-4; Plaintiff's Exhibit 6.) Even so, friction developed in the relationship between Stringfellow and Richardson. Richardson contends the relationship soured when

2

Stringfellow failed to meet his own sales goals.[2]  Stringfellow disputes that, saying he fell out of favor with Richardson because of a difference in racial attitudes:  Stringfellow charged that Richardson "repeatedly direct[ed] me to fire some of the Black employees because of their color and race."  (Stringfellow Deposition, Exhibit 8 at 3.)  Stringfellow contends that he tried to "promote Patrice Simmons (Black) and Willie Wilford (Black) and ... I gave a $.50 cent raise to another Black employee; and ... I refused to fire some of the Black employees simply to reduce their numbers in order to appease some of Mr. Richardson's racist white friends."  (Stringfellow Affidavit at 7.)

Richardson's alleged racial animus did not change the way Stringfellow handled personnel matters.  Stringfellow testified that he hired several black employees during his tenure as general manager, and that he promoted Carlos Clark, a black employee, to handle backup finance.  (Stringfellow Deposition at 168.)  "I hired people that I thought could do the job, sell cars, or like if I was hiring a manager, whatever could do the job.  I tried to hire and promote off who I thought could do the job and promote off of merit."  (*Id.* at 159.)

There   is   some   dispute   about   the   circumstances   of

---

[2] Richardson Affidavit ¶¶ 13-16.  Stringfellow denies making any forecasts, or committing to reach precise sales levels.  (Stringfellow Affidavit at 3.) Regardless, the court considers the evidence in the light most favorable to plaintiff, as it must.  *See* Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970).  Even so, what the court states as facts in this opinion "may not be the actual facts.  They are, however, the facts for present purposes."  Montoute v. Carr, 114 F.3d 181, 182 (11th Cir. 1997) (*quoting* Swint v. City of Wadley, 51 F.3d 988, 992 (11th Cir. 1995)).

3

Stringfellow's termination.[3]  It nevertheless is clear from the record that Richardson informed Stringfellow on August 31, 1994, that he had hired Richard Kitchens as general manager of operations, effectively removing Stringfellow from that position. (*Id.* at 120.)  It also is clear that Stringfellow worked the next day, although the rest of the sales managers apparently failed to show up at all or were late.  (*Id.* at 120-21.)  Richardson was not in the office that day, but it was Kitchens' first day on the job. (*Id.* at 121, 125.)  According to Stringfellow, Kitchens "was mad because all the managers weren't there and on time."  (*Id.* at 121.) Later that day, Kitchens "came down to my office and told me that he had spoken with David and that I was no longer employed."  (*Id.* at 123.)  Stringfellow later spoke to Richardson by telephone and confirmed what Kitchens had told him.  (*Id.* at 125.)

In a termination report completed on September 12, 1994, Richardson recorded his reason for the termination as Stringfellow's "[d]isagreement with Regal Nissan concerning personnel and personal changes."  (Stringfellow Affidavit, Exhibit 5.)  On that same report under the heading "Employee's Statement," Stringfellow wrote:

> The real reason that I believe that David Richardson wanted me out of the dealership is because I did not agree with him not wanting to hire or promote people because they were Black.  At one point he told me we had too many Black salespeople and to let some go.  These were things I did not agree with him, but he said I had no choice.  David Richardson [k]new I did not like vulgarity and therefore I believe this new person was brought in to run me off.  The new person on his first

---

[3] The conflicting evidence on this point is discussed *infra* at pp. 16-21.

4

morning was addressing me and using the word "fucking"
three times in one sentence. I will follow up this with
my lawyer and all the proper authorities to insure this
does not happen to anyone else.

P.S. I am still owed one weeks vacation pay.

(Stringfellow Affidavit, Exhibit 5.)  This lawsuit followed.

## II.  SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides
that summary judgment "shall be rendered forthwith if the
pleadings, depositions, answers to interrogatories, and admissions
on file, together with the affidavits, if any, show that there is
no genuine issue as to any material fact and that the moving party
is entitled to judgment as a matter of law." "An issue of fact is
'material' if it is a legal element of the claim under the
applicable substantive law which might affect the outcome of the
case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir.
1997)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248,
106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). "It is 'genuine' if
the record taken as a whole could lead a rational trier of fact to
find for the nonmoving party." *Id.*

The moving party has the initial burden of showing the absence
of a genuine issue as to any material fact. *Id.* In determining
whether this burden is met, the court must view the evidence "and
all factual inferences arising from it in the light most favorable
to the nonmoving party." *Id.* (quoting *Adickes v. S.H. Kress & Co.*,
398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970)).

Once the movant's initial burden is met, "the burden shifts to

5

the nonmovant to 'come forward with specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)). In meeting its burden, "the nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992)(citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)).

"'The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *Tipton*, 965 F.2d at 999 (quoting *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513). Even so, a "mere 'scintilla' of evidence supporting the [nonmoving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990)(citing *Anderson*, 477 U.S. at 242, 106 S.Ct. 2505). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356 (citation omitted).

## III. TITLE VII RETALIATION

Section 704(a) of Title VII provides protection to those who oppose or participate in uncovering an employer's discriminatory practices:

It shall be an unlawful employment practice for an employer to discriminate against any of his employees ...

6

> because he has opposed any practice made an unlawful
> employment practice by this [title], or because he has
> made a charge, testified, assisted, or participated in
> any manner in an investigation, proceeding, or hearing
> under this [title].

42 U.S.C. § 2000e-3(a).  Section 704(a) thus creates two causes of
action:  one for opposition to prohibited practices, and one for
participation in protected activity.  Stringfellow's claim arises
under the opposition clause.

Stringfellow bears the ultimate burden of proving, by a
preponderance of the evidence, that Regal Nissan intentionally
discriminated against him because he opposed employment practices
made unlawful by Title VII.  That can be done either by direct or
circumstantial evidence.  Stringfellow presents no direct evidence
of intentional retaliation.

When a plaintiff's evidence is circumstantial in nature, the
Supreme Court has developed a three stage framework for focusing
the inquiry.  See McDonnell Douglas Corp. v. Green, 411 U.S. 792,
93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); Texas Department of Community
Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207
(1981); St. Mary's Honor Center v. Hicks, 509 U.S. 502, 113 S.Ct.
2742, 125 L.Ed.2d 407 (1993).  First, a plaintiff must establish a
prima facie case.  To establish a prima facie case of retaliation,
plaintiff must show:  (1) statutorily protected activity; (2) an
adverse employment action; and (3) a causal link between the
protected expression and the adverse action.  Goldsmith v. City of
Atmore, 996 F.2d 1155, 1163 (11th Cir. 1993).

7

If a plaintiff establishes a *prima facie* case, then at the second stage of analysis the burden of production shifts to defendant to rebut the presumption of intentional discrimination thus raised by articulating legitimate, nondiscriminatory reasons for the employment action. *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093. If defendant does so, then in the final step of the inquiry plaintiff must have an opportunity to show by a preponderance of the evidence that defendant's stated reasons merely are pretexts for unlawful, discriminatory motives. *Id.*

## A.    Stringfellow's *Prima Facie* Case

Defendant does not dispute that Stringfellow's termination was an adverse employment action. Defendant instead challenges plaintiff's proof as to the first and third elements of a *prima face* case: statutorily protected activity and causation.

### (1)    Statutorily protected activity

Defendant argues that Stringfellow presents no evidence of a "specific, unlawful hiring decison" by defendant which could have motivated Stringfellow's alleged opposition. (Defendant's Memorandum in Support at 16.) So framed, the court undertakes the following inquiry:    what allegedly unlawful acts did plaintiff oppose?

Stringfellow's submission is woefully deficient in directing this court to specific, admissible evidence which provides an answer to that question. In brief, Stringfellow contends that he "engaged in statutorily protected activity by trying to promote

8

Black employees and by giving a raise to another Black employee; and by refusing to fire some of the Black employees to appease Mr. Richardson's white friends." (Plaintiff's Exhibit B at 2.) In support of that claim, Stringfellow directs the court to his complaint, his EEOC charge, his affidavit, and his termination report.

The complaint does not constitute specific, admissible evidence of unlawful activity by Regal Nissan.[4] In affidavit, plaintiff references the "Affidavits/Statements of Jay Elliott, Carlos Clark, and Chris Fox, which ... confirm David Richardson's violation of EEO laws and Regal Nissan's EEO policies." (Stringfellow Affidavit at 3.) However, the statements of Elliott, Clark, and Fox are not affidavits. Rather, they are unsworn letters from former Regal Nissan employees, directed "To Whom It May Concern," and purporting to describe the racially hostile environment at defendant's workplace.

It is a settled rule in this circuit that an unsworn statement is not competent to raise a fact issue precluding summary judgment. *See, e.g., Gordon v. Watson*, 622 F.2d 120, 123 (5th Cir. 1980) ("an unsworn statement ... may not [be] consider[ed] in determining the propriety of summary judgment");[5] *Jones v. Menard*, 559 F.2d 1282, 1285 n.4 (5th Cir. 1977) (citing 6 Moore's Federal Practice ¶ 56.22(1) at 56-1304 n.5 (2d ed. 1976) ("Unsworn statements cannot be

---

[4] Indeed, the allegations in the complaint simply mirror those already quoted from plaintiff's brief.

[5] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

9

considered" on summary judgment)); *see also, e.g., Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 159, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142, 155 (1970)(witness's statement, offered in opposition to motion, did not comply with Rule 56(e), because unsworn).

Statements offered in opposition to a motion for summary judgment that do not comply with Rule 56(e) must not be considered. *See, e.g., Automatic Radio Manufacturing v. Hazeltine Research*, 339 U.S. 827, 831, 70 S.Ct. 894, 896, 94 L.Ed. 1312 (1950)(court found "nothing available in the record to support [plaintiff's claim] since the affidavit in support thereof ... does not comply with Rule 56(e)"), *overruled in part on other grounds by Lear, Inc. v. Adkins*, 395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610 (1969); *Nicholson v. Georgia Department of Human Resources*, 918 F.2d 145, 148 (11th Cir. 1991)(unsubstantiated, unsworn statements may not be considered on appeal of summary judgment); *Friedel v. City of Madison*, 832 F.2d 965, 970 (7th Cir. 1987)("To the extent that affidavits are insufficient under Rule 56(e), they must not be considered on summary judgment"); *Washington Post Co. v. Keogh*, 365 F.2d 965, 971 (D.C. Cir. 1966)(affidavit which "runs afoul of Rule 56(e) ... cannot ... be relied upon to raise genuine issue of fact"), *cert. denied*, 385 U.S. 1011, 87 S.Ct. 708, 17 L.Ed.2d 548 (1967); *accord Impossible Electronic Techniques, Inc. v. Wackenhut Protective Systems, Inc.*, 669 F.2d 1026, 1035 (11th Cir. 1982)("appellant could not rely upon [unsworn] documents to resist summary judgment").

10

A statutory exception to this rule exists under 28 U.S.C. §
1746, which permits unsworn declarations to substitute for an
affiant's oath if the statement contained therein is made "under
penalty of perjury" and verified as "true and correct."  None of
the statements submitted by plaintiff conform to those
requirements.  Therefore, the statements of Elliot, Fox, and Clark
must be disregarded.  *Nissho-Iwai American Corp. v. Kline*, 845 F.2d
1300, 1306 (5th Cir. 1988).

Although Stringfellow curiously does not direct the court to
his deposition,[6] he testified therein that he refused Richardson's
directive to mistreat black employees, and continued to make
personnel decisions without regard to race.    (Stringfellow
Deposition at 159, 167-68, 214.)  Additionally, plaintiff testified
that he thought he was fired, "[b]ecause I tried to promote
Patrice, and I tried to promote Willie, and they were black."  (*Id.*
at 127.)   The termination report reflects similar allegations.[7]
Significantly, however, Stringfellow totally fails to direct this
court to evidence demonstrating precisely when his promotional
efforts were rebuffed.

Nevertheless, Stringfellow's deposition testimony provides
some evidence that Richardson fostered a racially biased personnel
policy.  Although Stringfellow offers no corroborating evidence of
such a policy, and Richardson denies those allegations, this court

---

[6]  Indeed, although plaintiff's evidentiary submission states that
deposition excerpts are included as Exhibit 2, nothing was submitted.
Accordingly, the court's references to deposition testimony reflect only those
pages submitted by defendant.

[7]  *See* Stringfellow Affidavit, Exhibit 5, set out *supra* pp. 4-5.

11

may not make credibility determinations in deciding a motion for summary judgment. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor"). Moreover, opposition is protected if the employee had a reasonable and good faith belief that the practice opposed constituted a violation of Title VII. *EEOC v. White & Son Enterprises*, 881 F.2d 1006, 1012 n.5 (11th Cir. 1989); *see also, e.g.*, *Jennings v. Tinley Park Community*, 796 F.2d 962, 967 (7th Cir. 1986)(holding that plaintiff must make retaliation claim in good faith and with a reasonable and sincere belief that he or she is opposing unlawful discrimination), *cert. denied*, 481 U.S. 1017, 107 S.Ct. 1895, 95 L.Ed.2d 502 (1987); *Rucker v. Higher Education Aids Board*, 669 F.2d 1179, 1182 (7th Cir. 1982)("it is good faith and reasonableness, not the fact of discrimination, that is the critical inquiry in a retaliation case").

Accordingly, although the court finds plaintiff's evidence on this element of a *prima facie* case to be thin, that showing is adequate at this stage of the analysis.

### (2) Causation

Defendant contends that Stringfellow lacks any evidence of causation. A great deal of evidence is not required: plaintiff need only establish that "the protected activity and the adverse action were not wholly unrelated." *EEOC v. Reichhold Chemicals, Inc.*, 988 F.2d 1564, 1571-72 (11th Cir. 1993). Yet, Stringfellow

presents no evidence linking his firing to his opposition to discriminatory employment practices. The record establishes only that Stringfellow's discharge occurred sometime <u>after</u> he tried to promote black employees, and sometime <u>after</u> he refused to fire black employees. Such evidence does not, by itself, suggest a causal relationship between those events.

> [A] telling temporal sequence can establish that nexus, but by telling we mean that the employer's adverse action follows fairly soon after the employee's protected expression. As the period of time separating the two lengthens, the hint of causation weakens. [Plaintiff's] discharge occurred five months after she filed her charge of discrimination, and we have previously concluded that when so much time passes before the adverse action takes place, the order in which the events occurred does not by itself suggest a causal link between them.

*Davidson v. Midelfort Clinic, Ltd.*, No. 96-2860, 1998 WL 3360, *10 (7th Cir. Jan. 7, 1998)(citations and internal quotation marks omitted); *see also, Hughes v. Derwinski*, 967 F.2d 1168, 1174-75 (7th Cir. 1992)(four months too remote); *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 503 (3rd Cir. 1997)("the timing of the alleged retaliatory action must be 'unusually suggestive' of retaliatory motive before a causal link will be inferred").

Stringfellow claims that he was fired because he "tried to promote Patrice, and ... Willie, and they were black." (Stringfellow Deposition at 127.) Yet, he was unable to pinpoint when those events occurred:

Q. When was it you tried to promote Patrice?

A. It was twice, and I can't remember the dates.

Q. Well, I need to know.

13

A.   Well, I don't remember.

Q.   Was it during '93 or '94?

A.   I don't believe -- it was probably '94.

. . .

Q.   '94.  Okay.  What's your best recollection of when
     in '94 it was you tried to promote Patrice?

A.   I can't remember the month.  I don't know if it was
     for sure the first time was in '94 or '93.

(*Id.* at 127-28.)  Similarly, Stringfellow was unable to recall when

his promotion of Carlos Clark occurred:

Q.   When was Mr. Clark hired?

A.   I don't remember.

Q.   '93 or '94, as best you can recall?

A.   It seems to me like he came there not long after I
     did, because I had worked with him [previously], so
     probably in '93.

. . .

Q.   And how long had he been there when you tried to
     promote him to backup finance manager?

A.   I don't remember.   It was probably somewhere in
     '94.

Q.   Did Mr. Clark leave before you left, or was he
     still employed there when you left?

A.   I don't think he was still there.   I can't
     remember, but I don't think he was.

(*Id.* at 168-69.)   Stringfellow also could not remember when

Richardson allegedly objected to Clark's promotion, or what his

objection was:

Q.   Did Mr. Richardson ever discuss with you the fact
     that Mr. Clark was performing some of these backup
     finance manager duties?

14

A.   Yes.

Q.   When was this?

A.   I can't remember.  I just remember he didn't like
     it.

Q.   What did he tell you specifically?

A.   I can't remember specifically.  I just remember
     that he didn't like it.

(*Id.* at 171.)   Finally, Stringfellow could not recall when

Richardson expressed his general views against hiring minorities.

In fact, the only evidence the court finds of such a conversation

reflects that it occurred around the time plaintiff was hired, not

when he was fired:

> When we first started working together and I started
> hiring, he ... asked me about the blacks that I had
> hired, and he told me that I didn't need to get too many
> of them.... And I [had] just [gone] to work for him.

(Stringfellow Deposition at 214.)   The length of time between that

conversation and plaintiff's termination precludes any inference of

a causal link between the two.

Stringfellow's proof of a causal linkage between his

opposition to discriminatory employment practices and his

termination thus is woefully inadequate. All the court can discern

with any certainty is that Stringfellow's statutorily protected

opposition must have occurred, if it occurred, sometime during his

employment.   That speculative range is sufficiently wide to

eliminate any causal connection. *See, e.g., Rio v. Runyon,* No. 94-

7078, 1997 WL 532498 (S.D. Fla. June 16, 1997)(seven months between

opposition and termination too remote to raise causal inference).

15

Plaintiff thus has failed to meet his burden of directing this court to specific, admissible evidence which establishes that a genuine issue exists on the element of causation. Accordingly, plaintiff has not presented a *prima face* case. Plaintiff having failed to present a *prima facie* case, no inference of discriminatory retaliation arises and this case is due to be dismissed.

**B.   Regal's Legitimate, Nondiscriminatory Reasons**

Even if the court were to assume from Stringfellow's sparse evidentiary submission that he demonstrated a *prima facie* case, however, defendant still presents legitimate, nondiscriminatory reasons for all of its actions which are not effectively refuted by Stringfellow.

First, defendant contends that Stringfellow initially was *demoted* on *August 31, 1994*, because of disappointing sales performance, inability to reduce employee turnover, and poor customer relations skills. In support of those claims, defendant directs the court to evidence that Richardson counseled Stringfellow for unprofessional treatment of customers on at least two occasions. (Stringfellow Deposition at 99-104.) The second, and more serious, of those incidents arose from a June 10, 1994 letter mailed by Stringfellow on Regal Nissan letterhead to a customer's employer, and stating:

> I encountered one of your staff members that came into our dealership. His name is Salah Yousif and he informed me that he is the Head Soccer Coach at A&M University. I thought you might want to know that he is a very rude representative of your University. We have

16

dealt with several members of your staff, like Ms. Betty
Austin and Coach Harris, which was a pleasure.

I sent you this information because I appreciate it
when anyone advises me of an employee being disrespectful
to our customers.

(Stringfellow Deposition, Defendant's Exhibit 3.)   When Richardson

heard about the letter, he communicated his "unhapp[iness]" to

Stringfellow.   (Stringfellow Deposition at 107.)   Stringfellow did

not take the criticism constructively;   Richardson claims he was

"combative" and "not responsive."   (Richardson Affidavit ¶¶ 10,

12.)

Defendant also cites the dealership's disappointing customer

satisfaction ratings as grounds for replacing Stringfellow as

general manager.   (Richardson Affidavit ¶¶ 19, 23.)   Stringfellow

does not deny that ratings remained below the district and regional

average during his tenure.   (Richardson Affidavit ¶ 19 and Exhibit

3.)   Yet, when Richardson tried to discuss those problems,

Stringfellow "consistently would make excuses and reply that [he]

did not understand."   (Richardson Affidavit ¶¶ 10, 12, 20.)

Richardson also claims that Stringfellow was unable to curb

the dealership's high rate of employee turnover, and was unable to

keep his expenses within an established budget.   (Richardson

Affidavit ¶¶ 17-18.)   Stringfellow does not refute the high

turnover rate, and admits he exceeded his monthly advertising

budget "most of the time."   (Stringfellow Deposition at 241-42.)

Finally, defendant contends that Stringfellow ultimately was

*terminated* on *September 1, 1994*, because he "threatened to harm

17

Defendant's business ... and, more importantly, [he] carried out that threat by instructing his sales managers not to report for work...." (Defendant's Memorandum in Support at 20; Richardson Affidavit ¶¶ 27-30; Buis Affidavit ¶ 6.) Stringfellow denies those allegations generally, but admits hosting several of defendant's employees at his home the night before the walkout. (Stringfellow Affidavit at 4-5; Stringfellow Deposition at 114.)

Thus, defendant has met its burden of articulating nondiscriminatory reasons for Stringfellow's initial demotion and ultimate termination, and has directed the court to specific, admissible evidence supporting those reasons. Any presumption of retaliation which would have been raised by a *prima facie* showing now "drops from the case." *St. Mary's Honor Center*, 509 U.S. at 509, 113 S.Ct. at 2747 (quoting *Burdine*, 450 U.S. at 255 n.10, 101 S.Ct. at 1095 n.10).

## C.   Stringfellow's Showing of Pretext

In an attempt to rebut defendant's contention that he was fired for "instructing his sales not to report for work," Stringfellow argues that he was fired on August 31, 1994 — the date defendant contends he only was demoted — not September 1, 1994. If Stringfellow's contention is true, then the sales staff walk-out allegedly organized by Stringfellow during a meeting at his home on the evening of August 31st could not be the real reason he was fired.

Stringfellow offers two pieces of evidence to support his

18

claim that he was fired on August 31, 1994.  First, he presents his

affidavit, stating in part:

> On August 31, 1994, I was notified by David Richardson
> that I was being replaced in my position of General
> Manager of Operations, and he brought in my replacement
> that day.  Contrary to his assertion, I was not offered
> any other position with Regal Nissan Co. by David
> Richardson, nor anyone else; and I was in fact officially
> terminated on September 2, 199[4], although I did not
> have a job after August 31, 1994.

(Stringfellow Affidavit at 2.)  The court notes that plaintiff does

not unequivocally assert he was fired on August 31; rather, he

merely states he was "not offered any other position" on the day he

was "replaced."  Moreover, even if the statement is construed as

plaintiff suggests, it contradicts his deposition testimony:

> Q.  All right.  Did you have any run-ins with Mr.
>     Kitchens on September 1st?
>
> A.  Yes.  He was mad because all the managers weren't
>     there and on time.
>
>     . . .
>
> Q.  So you and Mr. Kitchens had a discussion.  He was
>     upset because the managers weren't there.  Any
>     other conversations you had with Mr. Kitchens [that
>     day]?
>
> . . .
>
> A.  The only other conversation I had besides the one in
>     the hall was when <u>he came down to my office and told
>     me that he had spoken with David and that I was no
>     longer employed</u>.
>
> . . .
>
> Q.  Okay.  What did you tell him when he told you that
>     you were no longer employed?
>
> A.  I think I asked him is that what David said.
>
> Q.  And his response was yes?

19

A.   Yes.

(Stringfellow Deposition at 121-23 (emphasis supplied).)  Plaintiff may not give "clear answers to unambiguous questions" in a deposition and later attempt to create a genuine issue of material fact in a contradictory affidavit that fails to explain the inconsistency. *Van. T. Junkins and Associates v. U.S. Industries, Inc.*, 736 F.2d 656, 657 (11th Cir. 1984).  Accordingly, this court disregards that portion of Stringfellow's affidavit which contradicts his deposition testimony.

Second, Stringfellow directs the court to the unsworn, uncertified statement of Gary Waddell to support his claim that he was fired on August 31.  (*Id.*)  For reasons already discussed, such a statement cannot be considered in opposition to summary judgment.

It also is significant to note that, in his termination report, plaintiff states that Kitchens was brought in "to run me off."  (Stringfellow Affidavit, Exhibit 5.)  Kitchens could not do that if Richardson already had terminated his employment.  Thus, all evidence properly before the court demonstrates that plaintiff was fired on September 1, 1994, __after__ he allegedly organized the sales staff walk-out.[8]

---

[8] Although defendant does not raise this point, the court notes that organizing a walk-out of employees to protest allegedly racist policies would not constitute opposition under Title VII.  *See Rosser v. Laborers' International Union of North America, Local Number 438*, 616 F.2d 221, 223 (5th Cir. 1980)(holding that section 704(a) does not cover "instances where the employee's conduct in protest of an unlawful employment practice so interferes with the performance of his job that it renders him ineffective in the position for which he was employed"); *Rollins v. State of Florida Department of Law Enforcement*, 868 F.2d 397, 400 (11th Cir. 1989)(noting that "[t]his court has repeatedly recognized that some otherwise protected conduct may be so disruptive or inappropriate as to fall outside the statute's protection").  The court finds this is such a case.

Having so found, the court now turns to plaintiff's additional
evidence of pretext.   Plaintiff offers only the following:

> Plaintiff denies that he was terminated on September 1,
> 1994 because he hosted several of Defendant's employees
> at his home the evening before and complained of his
> discharge, and because the managers boycotted work the
> next day in protest of his discharge.

(Plaintiff's Exhibit A, ¶ 6.)   Because plaintiff fails to rebut

defendant's nondiscriminatory reason for his discharge with

anything stronger than a vague, conclusory denial, summary judgment

for defendant is appropriate, even if plaintiff had properly

presented a *prima facie* case.

### IV.  DEFENDANT'S STATE LAW CLAIM

Federal jurisdiction over pendent state law claims is governed

by 28 U.S.C. § 1367(a) which provides that:

> in any civil action in which the district courts have
> original jurisdiction, the district courts shall have
> supplemental jurisdiction over all claims that are so
> related to claims in the action within such original
> jurisdiction that they form part of the same case or
> controversy under Article III of the United States
> Constitution.

Even so, "district courts may decline to exercise supplemental

jurisdiction over a claim under subsection (a) if ... (3) the

district court has dismissed all claims over which it has original

jurisdiction." 28 U.S.C. § 1367(c)(3).  This court exercises such

discretion and declines.   Defendant's counterclaim is due to be

dismissed without prejudice to defendant to refile in an

21

appropriate state court.[9]

## V.   CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment as to plaintiff's federal claim is due to be granted, and defendant's state law claim is due to be dismissed.   An order consistent with this memorandum opinion shall be entered contemporaneously herewith.

DONE this _24th_ day of February, 1998.

_____
United States District Judge

---

[9]   The court notes that the statute of limitations for a claim for intentional interference with business or contractual relations is two years.   See Ala. Code § 6-2-38(1).   Stringfellow's allegedly tortious interference occurred on March 18, 1996, the date on which Mercedes-Benz received the letter from him describing defendant's allegedly discriminatory conduct.   Thus, defendant must refile that claim on or before March 18, 1998 to avoid the statutory bar.